**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOHN LARANCUENT, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | Case No. |
| v. | ) | **CLASS ACTION COMPLAINT** |
| RADARIS, LLC, | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff John Larancuent (together, "Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendant Radaris, LLC ("Defendant" or "Radaris"). Plaintiff makes the following allegations pursuant to their counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## INTRODUCTION

1. On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288, which amended the PTFA to prohibit commercially listing a cell phone number in a directory, without permission. *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2. This prohibition is designed to protect privacy. As former State Representative Mark Cloer, a prime sponsor of HB05-1288, stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."

3. Indeed, concern over cell phone privacy is widespread. According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. ... This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. ... A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish to restrict access to their cell phone number to family and friends.

4. The Colorado General Assembly enacted subsection (4) of the PTFA to address

these privacy concerns and to protect cell phone users from the misappropriation of their personal information. This aligns with the PTFA's overall purpose, as articulated by Colo. Rev. Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5. Colo. Rev. Stat. § 6-1-304(4) provides that, "[o]n or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]"

6. Despite this abundantly clear proscription, Defendant operates a for-profit online "people search" business built on the aggregation, publication, and monetization of individuals' personal information. Among other things, Defendant knowingly publishes Colorado residents' cellular telephone numbers through its website, radaris.com, without the affirmative consent required by Colorado law.

7. Defendant has listed the cellular telephone numbers of thousands of Colorado residents in its for-sale and for-profit directory, without requesting (let alone actually receiving) affirmative consent to such listings. Defendant commercially exploits Plaintiff's and Class Members' cellular telephone numbers in direct violation of the PTFA through publicly searchable

profile pages, subscription products, and data-driven advertising.

8. Plaintiff and Class Members never provided Defendant with written, oral, or electronic authorization to publicly display, index, market, sell, disseminate, or commercially exploit their cellular telephone numbers through radaris.com.

9. Plaintiff and Class Members never created accounts with Defendant, registered for Defendant's services, purchased products from Defendant, or otherwise interacted with Defendant in any manner that could plausibly constitute affirmative consent under the PTFA.

10. On information and belief, Defendant obtains cellular telephone numbers from third-party sources, data aggregators, automated scraping activities, public-record compilations, or other indirect channels rather than directly from the individuals whose information Defendant commercially lists.

11. Any prior disclosure of a cellular telephone number in unrelated contexts does not authorize Defendant to aggregate, republish, organize, index, and commercially disseminate that number through a for-profit online people-search directory.

12. Defendant nevertheless knowingly publishes and monetizes Plaintiff's and Class Members' cellular telephone numbers without obtaining the affirmative consent required by Colo. Rev. Stat. § 6-1-304(4)(a)(I).

13. Defendant's violations are not accidental, incidental, or passive. Defendant intentionally aggregates, matches, organizes, indexes, republishes, and monetizes cellular telephone numbers in a directory specifically designed to generate revenue.

14. Thus, although Defendant profits handsomely from its unauthorized commercial listing of Plaintiff's and other Class Members' personal information, it does so at the expense of Coloradans' statutory privacy rights under the PTFA.

15. Not only is Defendant's misappropriation unlawful — it is also dangerous. The Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers' collection and use of consumer data. ... [T]hey may facilitate the sending of advertisements ... which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, ... people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely [m]ay [c]reate [s]ecurity [r]isks[.][1]

16. Plaintiff brings this action to prevent Defendant from further violating the privacy rights of Colorado cell phone users and to recover statutory damages from Defendant, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PARTIES

17. Plaintiff John Larancuent is, and has been at all relevant times, a resident and citizen of Colorado. Plaintiff Larancuent's cellular telephone number was listed by Defendant in its directory, available at radaris.com, to advertise products and services and/or to fulfill Defendant's provision of subscription services:

[1] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf (last accessed May 18, 2026).



John Larancuent · Age [redacted]

[redacted] CO [redacted] ✓Verified

View Profile

| | |
|---|---|
| FULL NAME | John R Larancuent |
| NAME VARIANTS | Johnn · Jon · Jack · Jackie · Jacky · Johnny |
| ALSO KNOWN AS | John T · John R Larancvent |
| ASSOCIATES | [redacted] |
| RELATIVES | |
| ADDRESSES | |
| PHONES | [redacted] (719) 963 [redacted] |
| AGE | [redacted] |

View all details on John Larancuent →

[2]

18. Defendant never requested — and Plaintiff Larancuent never provided — affirmative consent, through written, oral, or electronic means, to such listing.

19. Plaintiff Larancuent has no relationship with Defendant whatsoever, and to date has never visited Defendant's website for the purpose of creating an account or consenting to any listing.

20. Plaintiff Larancuent had never heard of Defendant or its website and had no reasonable ability to discover Defendant's use of his personal information until shortly before filing suit.

21. Defendant publicly displayed, indexed, marketed, and disseminated Plaintiff Larancuent's cellular telephone number to third parties through searchable profile pages on

---

[2] https://radaris.com/p/John/Larancuent/ (last accessed May 18, 2026) (redacted to protect personal information, although the information is completely viewable on the Radaris website).

radaris.com.

22. Defendant Radaris, LLC is a Massachusetts limited liability company with its principal place of business at 1853 Commonwealth Avenue, Boston, Massachusetts 02135. Its registered agent is Edgar Lopin, 1853 Commonwealth Avenue, Brighton, Massachusetts 02135. Defendant is a business primarily engaged in the sale or lease of goods or services. Specifically, Defendant owns and operates the directory radaris.com. Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

23. Defendant's entire business relies on compiling consumer identities and associated personal information (including cell phone numbers) into a directory which shows up in internet search-engine results. Defendant then monetizes those profiles through advertising, subscription sales, lead generation, and the sale of enhanced background reports.

**JURISDICTION AND VENUE**

24. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, in that the proposed Class consists of over 100 people, the Classes are minimally diverse, on information and belief more than $5 million is at issue, and none of the exceptions to CAFA jurisdiction applies. On information and belief, Defendant has commercially listed the cellular telephone numbers of tens of thousands of Colorado residents through radaris.com during the applicable limitations period, placing more than $5 million in controversy exclusive of interest and costs.

25. The Court has personal jurisdiction over Defendant because Defendant is organized under the laws of Massachusetts and maintains its principal place of business in this District. Defendant also regularly transacts business by listing cellular telephone numbers of thousands of

individuals on radaris.com, including Colorado residents, and derives substantial revenue from subscriptions and advertising directed to users nationwide.

26. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events giving rise to the claims — including Defendant's compilation and maintenance of its directory — occurred in and emanates from this District.

## FACTUAL ALLEGATIONS

### I. Overview of Defendant's Directory

27. Defendant is a data broker that compiles, aggregates, and monetizes personal information about individuals, including cellular telephone numbers, which it publishes through its website, radaris.com.

28. Defendant's platform operates as a directory. Its platform systematically organizes individuals' personal information—including names, phone numbers, and addresses—and makes that information retrievable to the public through searchable and browsable interfaces. Users may locate individuals by name, geographic location, or other identifying criteria, and may additionally navigate alphabetized or otherwise structured listings of individuals.

29. Defendant's directory prominently displays individuals' cellular telephone numbers and other personal identifiers. It also offers enhanced access to such information through paid subscription services, which provide more extensive reports and removes limitations on access.

30. Defendant provides an online "people search" service through its website. Companies that provide "people search" services, like Defendant, specialize in compiling vast amounts of information about individuals from various sources, such as public records, social

media, and other data brokers.




3

31. After aggregation and publication, Defendant then monetizes this personal information by allowing users to access data about individuals either for free or through paid subscriptions that furnish more comprehensive background reports.

32. Defendant uses data aggregation tools to collect, associate, normalize, organize, and republish personal information concerning identifiable individuals, including cellular telephone numbers associated with Colorado residents.

33. Defendant distinguishes between cellular and landline telephone numbers and intentionally republishes cellular telephone numbers as part of the consumer profiles displayed and sold through radaris.com.

34. Using radaris.com, anyone can search for and view Colorado residents' cell phone numbers, addresses, email addresses, relatives, and much more. This is achieved by simply searching for an individual by name, phone number, email, or other parameters.

35. After entering search parameters on radaris.com, users are presented with a list of

---

[3] https://radaris.com/ (last accessed May 18, 2026).

search results. Each result corresponds to an actual person that Defendant has located who matches the searched parameters. Search results include, among other things, each person's cell phone number(s), address history, known aliases, and associated relatives.

36. Users of radaris.com can also locate individuals through Defendant's directory listings, which organize individuals alphabetically by name, enabling any user to browse and identify persons of interest along with their cell phone numbers and other personal information.

37. Although certain portions of radaris.com are accessible without payment, those "free" profile pages are themselves revenue-generating commercial products. Defendant uses publicly accessible consumer profiles — including Plaintiff's and Class Members' cellular telephone numbers — to attract user traffic, increase search-engine visibility, generate advertising impressions and related advertising revenue, and induce users to purchase Defendant's paid subscription services and enhanced background reports.

38. In addition to "free" services, Defendant also offers paid subscription tiers that unlock additional personal details and unlimited searches, through which Defendant sells access to comprehensive background reports containing, among other things, a searched individual's cell phone number(s), address history, email addresses, and other personal details. These subscription products are central to Defendant's revenue-generating operations and commercial exploitation of consumers' personal information.

39. In sum, Defendant uses Plaintiff's and Class Members' personal information — including cellular telephone numbers — to attract web traffic, generate advertising impressions, induce paid subscriptions, furnish consumer reports, and otherwise monetize consumer identity data. Therefore, Defendant knowingly lists Colorado residents' cellular telephone numbers in its directory for commercial purposes.

40. Defendant's listing of cellular telephone numbers specifically serves a commercial purpose. The inclusion of such information increases the value of Defendant's directory, attracts user traffic, and drives conversion to paid subscription tiers.

41. Indeed, Defendant leverages the availability of personal contact information—including cellular telephone numbers—as a key feature of its service offerings. Access to such information is used to induce users to subscribe to premium services and to generate advertising revenue.

42. Accordingly, Defendant's publication of Plaintiff's and Class Members' cellular telephone numbers is not incidental, but central to its revenue-generating business model.

## II. Defendant's Conduct Harms Coloradans

43. Consumer data is key to the $26 billion-per-year online advertising industry in the United States. Per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis — and profit.[4]

44. In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data. These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data. Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data. A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing

[4] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf (last accessed May 18, 2026).

business with companies who they believe do not protect their privacy.[5]

45. Defendant's conduct deprives Plaintiff and Class Members of their statutory privacy rights under the PTFA and their ability to control the commercial dissemination of their cellular telephone numbers. Defendant further appropriates and exploits the economic value of Plaintiff's and Class Members' personal information for Defendant's own commercial gain without consent, authorization, or compensation.

46. Further, "people search" sites like radaris.com offer a wealth of information that can be exploited by bad actors. Sites like Defendant's "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[6]

47. By publicly exposing Plaintiff's and Class Members' cellular telephone numbers through searchable online profiles, Defendant subjects Plaintiff and Class Members to unwanted solicitation, harassment, scams, phishing attempts, identity-based fraud, and other invasions of privacy and security.

48. For example, cell phone numbers are also a key piece of information for SIM swappers — hackers who take over a target's phone number in order to receive their calls and texts, which in turn can allow them to break into financial, email, and cryptocurrency accounts. Armed with a cell phone number, a SIM swapper may impersonate the victim, convince their telecom to reroute text messages to a SIM card the hacker controls, and then use password reset or multi-factor authentication texts to access the victim's most sensitive accounts. For this reason,

---

[5] https://www.prnewswire.com/news-releases/truste-research-reveals-more-consumers-concerned-about-business-data-collection-than-government-surveillance-242383421.html (last accessed May 18, 2026).

[6] https://cyberguy.com/privacy/dangerous-intersection-of-people-search-sites-and-scams/ (last accessed May 18, 2026).

the FBI recommends on its website that people not publicly advertise their phone number.[7]

49. Information disclosures like Defendant's are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[8] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other assets to spend on seemingly attractive offers."[9]

50. Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[10]

## III. Plaintiff Suffered Concrete Harm

51. Defendant's conduct has caused Plaintiff and Class Members concrete and particularized harm.

52. By publicly listing Plaintiff's cellular telephone numbers without consent, Defendant invaded Plaintiff's privacy interests in their personal contact information—interests long recognized at common law and protected by statute.

53. Defendant's actions deprived Plaintiff of control over his personal information, including the right to determine whether and to whom their cellular telephone numbers are disclosed.

54. Additionally, Defendant's publication of Plaintiff and Class Member's cellular

[7] https://www.ic3.gov/PSA/2025/PSA250723-3 (last accessed May 18, 2026).

[8] https://www.nytimes.com/2007/05/20/business/20tele.html (last accessed May 18, 2026).

[9] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf (last accessed May 18, 2026).

[10] *Id.*

telephone numbers exposed them to unwanted intrusions, including unsolicited communications and increased risk of harassment, fraud, and other misuse of their personal data.

55. These harms are actual and concrete and are directly traceable to Defendant's unlawful conduct.

## TOLLING AND DELAYED DISCOVERY

56. Plaintiff and Class Members could not reasonably have discovered Defendant's unlawful conduct earlier because Defendant does not directly notify individuals that their cellular telephone numbers have been commercially listed on radaris.com.

57. Plaintiff and Class Members had no relationship with Defendant, never provided consent to Defendant, and had no reason to suspect Defendant was commercially exploiting their cellular telephone numbers.

58. Defendant's unlawful listings were inherently self-concealing because they were embedded within Defendant's vast online data-brokerage platform and discoverable only through targeted searches or accidental discovery.

59. Accordingly, any applicable limitations period is tolled under the discovery rule and related equitable doctrines.

## CLASS ALLEGATIONS

60. Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class defined as:

> **All Colorado residents whose cellular telephone numbers were listed in Defendant's directory, including on radaris.com or in associated datasets maintained by Defendant, without their affirmative consent, during the applicable statute of limitations period. (the "Class").**

61. Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

62. The "Class Period" is the period beginning on the date established by the Court's

determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement or preliminary approval of a settlement.

63. Excluded from the Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

64. **Numerosity/Ascertainability**. Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class Members is unknown to Plaintiff currently. However, it is estimated that there are thousands or tens of thousands of individuals in the Class. The identity of such membership is readily ascertainable through Defendant's records and data systems, which track the publication and retention of personal information within its directory.

65. **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. Questions of law and fact common to the Class Members predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such generally applicable conduct is inherent in Defendant's wrongful conduct. The following questions of law and fact are common to the Class:

a. Whether Defendant knowingly listed Class Members' cellular telephone numbers in a directory;

b. whether Defendant's listings were made for a commercial purpose;

c. whether Defendant obtained affirmative consent;

d. whether Defendant's conduct was systematic and uniform;

e. whether Defendant's conduct violated Colo. Rev. Stat. § 6-1-304(4)(a)(I);

f. whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest, and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

66. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiffs, like all other Class Members, had his cell phone number listed on radaris.com for a commercial purpose; Defendant did so without requesting or receiving Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendant's unauthorized commercialization, publication, and dissemination of Plaintiff's cellular telephone number (including the economic value thereof) came at the expense of Plaintiff's PTFA privacy rights.

67. **Adequacy:** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

68. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by

the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication. Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive and declaratory relief with respect to the Class as a whole.

**COUNT I**
**Violation of the Colorado Prevention of Telemarketing Fraud Act**
**Colo. Rev. Stat. § 6-1-304(4)(a)(I)**

69. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

70. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

71. Colo. Rev. Stat. § 6-1-304(4) provides: "a person commits an unlawful telemarketing practice if the person knowingly: (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]"

72. Defendant's website, radaris.com, functions as a directory by compiling, organizing, indexing, and publicly displaying individuals' personal information — including cellular telephone numbers — through searchable consumer profile pages and alphabetical name-based listings. Users may search for individuals by name, telephone number, address, email address, or other identifying information in order to locate and obtain personal contact information concerning the searched individual.

73. Defendant knowingly lists Colorado residents' cellular telephone numbers in its directory. Defendant does not passively host third-party content; rather, it intentionally collects, intentionally aggregates, organizes, indexes, republishes, and monetizes cellular telephone numbers through searchable online consumer profiles. On information and belief, Defendant distinguishes cellular telephone numbers from landline numbers, associates those numbers with identifiable individuals and geographic locations, including Colorado residents, and intentionally makes those numbers publicly available to drive traffic, advertising revenue, and paid subscription sales.

74. Defendant engages in this conduct for commercial purposes. Defendant monetizes Plaintiff's and Class Members' cellular telephone numbers by generating advertising revenue, increasing website traffic, improving search-engine visibility, inducing purchases of subscription products, and furnishing paid background reports and identity-search services to customers. Defendant advertises that users can "find people" and obtain contact information, including phone numbers, for virtually any individual in the United States. Cellular telephone numbers are a central feature of Defendant's commercial offerings and paid subscription products.

75. Defendant does not obtain affirmative consent — whether written, oral, or electronic — from Plaintiffs or Class Members before commercially listing their cellular telephone numbers in its directory. Plaintiffs and Class Members neither created accounts with Defendant nor authorized Defendant to publish, market, index, or commercially disseminate their cellular telephone numbers through radaris.com. Upon information and belief, Defendant also does not maintain any system or protocol to verify the existence of such consent before including a number in its directory.

76. Defendant's unlawful conduct invaded Plaintiff's and Class Members' statutory

privacy rights under the PTFA, deprived them of control over the dissemination and commercialization of their cellular telephone numbers, appropriated the economic value of their personal information for Defendant's own profit, and publicly exposed them to heightened risks of unwanted solicitation, harassment, scams, identity theft, SIM-swapping attacks, and related harms.

77. As a direct and proximate result of Defendant's violations, Plaintiff and Class Members have suffered injuries as described above and are entitled to the remedies provided by Colo. Rev. Stat. § 6-1-305.

78. Thus, on behalf of themselves and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of themselves and the proposed Class respectfully request that this Court enter an Order:

(a) Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as the representatives of the Class, and appointing Plaintiff's counsel as Class Counsel;

(b) Declaring that Defendant's actions, as set out above, violate Colorado's Prevention of Telemarketing Fraud Act.

(c) Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

(d) Awarding injunctive and other equitable relief as is necessary to protect the

interests of the Class, including, *inter alia*, an Order requiring Defendant to remove all cellular telephone numbers of Colorado residents from its directory unless and until it obtains affirmative consent, and to implement procedures ensuring compliance with Colo. Rev. Stat. § 6-1-304(4);

(e) Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

(f) Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

(g) Awarding such other and further relief as equity and justice may require.

**JURY DEMAND**

Plaintiff demands a trial by jury on all counts so triable.

Dated: May 29, 2026

Respectfully submitted,

*/s/ Nicole Maruzzi*
Zachary Arbitman*
Nicole Maruzzi
George Donnelly*
FELDMAN SHEPHERD
WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Tel. 215.567.8300
zarbitman@feldmanshepherd.com
nmaruzzi@feldmanshepherd.com
gdonnelly@feldmansheperd.com

Gary M. Klinger*
William J. Edelman*
Michael A. Acciavatti*
MILBERG, PLLC
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel. 866.252.0878
gklinger@milberg.com
wedelman@milberg.com
macciavatti@milberg.com

**Pro Hac Vice* applications forthcoming
*Attorneys for Plaintiffs and the Class*